# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF PUERTO RICO

**SHAKIRA NAVARRO-ROSARIO**

 **Plaintiff,**

  **v.**            **Civil No. 09-2253 (GAG/MEL)**

**FEDERICO J. FUXA-CATALAN, et al.**

 **Defendants.**

## MEMORANDUM OPINION AND ORDER

Plaintiff Shakira Navarro-Rosario ("Plaintiff") brought this action seeking redress for alleged discrimination on the basis of sex and pregnancy, pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 29 U.S.C. §§ 2000e et seq., and the Pregnancy Discrimination Act of 1978 ("PDA"), 29 U.S.C. § 2000e-(k).  Plaintiff also invokes the supplemental jurisdiction of the court to adjudicate her claims under various Puerto Rico state laws.  Plaintiff filed this claim against her employer, FJ Construction Co., Inc. ("FJ Construction"), and her employer's sister company, Escorial Development, Inc. ("Escorial Development"), as well as Federico Fuxa-Catalan ("Fuxa") and Gloria Perez ("Perez"), as the President and Comptroller, respectively, of both companies.[1]

This matter is currently before the court on co-defendants Fuxa and Perez's motion to dismiss (Docket No. 22), co-defendant FJ Construction's motion to dismiss (Docket No. 23), and Plaintiff's motion requesting leave to file amended complaint and for voluntary dismissal (Docket No. 32).  Plaintiff has timely opposed both motions to dismiss (Docket Nos. 30 & 31, respectively).

After reviewing the pleadings and pertinent law, the court **GRANTS in part and DENIES in part** Plaintiff's motion for voluntary dismissal and leave to amend the complaint (Docket No. 32), **GRANTS** co-defendant Fuxa and Perez's motion to dismiss (Docket No. 22), and **FINDS AS**

---

[1] Also included in the complaint are defendant Fuxa's wife and conjugal partnership.  Javier Andreu, Vice-President of both companies, was also brought in the complaint, but the claims against him were voluntarily dismissed.  (See Docket Nos. 18 & 19.)

**Civil No. 09-2253 (GAG/MEL)**                    2

**MOOT** co-defendant FJ Construction's motion to dismiss (Docket No. 23).

**I.      Standard of Review**

      ***A.      Plaintiff's Motion for Voluntary Dismissal and Leave to Amend the Complaint (Docket No. 32)***

      "Rule 41(a)(2) establishes a framework for district courts to enter voluntary dismissals." Esso Standard Oil Co. (Puerto Rico) v. Rodriguez-Perez, 455 F.3d 1, 3 (1st Cir. 2006). In relevant part, Rule 41(a)(2) states that "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. . . . Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice." Fed. R. Civ. P. 41(a)(2). Generally, the dismissal of an action under Rule 41(a)(2) is committed to the discretion of the court. The court notes, however, that the purpose of Rule 41(a)(2) is to permit a plaintiff, with approval of the court, to voluntarily dismiss an action "so long as no other party will be prejudiced." Puerto Rico Maritime Shipping Auth. v. Leith, 668 F.2d 46, 50 (1st Cir. 1981) (internal quotation omitted).

      Motions to amend a complaint, on the other hand, are governed by Rule 15(a), which reflects a liberal amendment policy, see O'Connell v. Hyatt Hotels of P.R. , 357 F.3d 152, 154 (1st Cir. 2004), and provides that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Even so, "the district court enjoys significant latitude in deciding whether to grant leave to amend." ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46, 55 (1st Cir. 2008). Reasons for denying leave include undue delay in filing the motion, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of the amendment. Foman v. Davis, 371 U.S. 178, 182 (1962).

      "In assessing futility, the district court must apply the standard which applies to motions to dismiss under Fed. R. Civ. P. 12(b)(6)." Adorno v. Crowley Towing & Transp. Co., 443 F.3d 122, 126 (1st Cir. 2006) (citing Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996). As stated by the First Circuit, " 'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." Glassman, 90 F.3d at 623 (citing 3 Moore's Federal Practice, § 15.08[4] at 15-80 (2d ed. 1993)).

**Civil No. 09-2253 (GAG/MEL)**          3

### B.  Co-defendants' Motions to Dismiss (Docket Nos. 22 & 23)

Under Rule 12(b)(6), a defendant may move to dismiss an action against him for failure to state a claim upon which relief can be granted.  See Fed.R.Civ.P. 12(b)(6).  When considering a motion to dismiss, the court must decide whether the complaint alleges enough facts to "raise a right to relief above the speculative level."  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In so doing, the court accepts as true all well-pleaded facts and draws all reasonable inferences in the plaintiff's favor.  Parker v. Hurley, 514 F.3d 87, 90 (1st Cir. 2008).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. (citing Twombly, 550 U.S. at 555).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged –but it has not 'show[n]'– 'that the pleader is entitled to relief.' "  Iqbal, 129 S. Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)).

In sum, when passing on a motion to dismiss the court must follow two principles: (1) legal conclusions masquerading as factual allegations are not entitled to the presumption of truth; and (2) plausibility analysis is a context-specific task that requires courts to use their judicial experience and common sense.  Id. at 1949-50 (citing Twombly, 550 U.S. at 555-56).  In applying these principles, courts may first separate out merely conclusory pleadings, and then focus upon the remaining well-pleaded factual allegations to determine if they plausibly give rise to an entitlement to relief.  Iqbal 129 S. Ct. at 1950.

## II.     Discussion

### A.     Plaintiff's Motion for Voluntary Dismissal and Leave to Amend the Complaint (Docket No. 32)

#### 1.      Voluntary Dismissal

Plaintiff has moved the court to allow the voluntary dismissal of a 42 U.S.C. § 1983 ("Section 1983") cause of action that she indicates was erroneously included in the complaint.  She

**Civil No. 09-2253 (GAG/MEL)**          4

also seeks dismissal of her cause of action under Article 1802 of the Civil Code of Puerto Rico ("Article 1802"), P.R. Laws Ann. tit. 31, § 5141,  since this claim is already covered by the specific labor laws invoked in the complaint.[2]

The court finds that, given the early stage at which Plaintiff brings her motion for voluntary dismissal, it would not unduly prejudice the defendants for the court to grant her motion as to both causes of action.   Moreover, the court notes that it appears from the context of the complaint as a whole that the Section 1983 reference might have been included by mistake, as Plaintiff argues in her motion.   It is mentioned for the first and only time in paragraph 5.3 of the complaint, perfunctorily and within Plaintiff's description of her Title VII cause of action.   Furthermore, Plaintiff is correct in stating that her Article 1802 claim is covered by specific labor laws.  This court has previously held that under the laws of Puerto Rico, "to the extent that a specific labor law covers the conduct for which a plaintiff seeks damages, [she] is barred from using that same conduct to also bring a claim under Article 1802." Rosario v. McConnell Valdes, 2008 WL 509204, *1-2 (D.P.R. 2008) (relying on Santini-Rivera v. Serv. Air, Inc., 137 D.P.R. 1, 1994 P.R. Eng. 909, 527 (1994)); see also Suarez v. Venator Group, Inc., 2009 WL 4015655, *3-4 (D.P.R. 2009); Peña Alcantara v. Correctional Health Services, Corp., 2009 WL 890467, *5-6 (D.P.R. 2009).

Therefore, the court **GRANTS** Plaintiff's motion for voluntary dismissal (Docket No. 32) and **DISMISSES** with prejudice her Section 1983 and Article 1802 claims against all defendants.

### 2.      Motion for Leave to Amend

Plaintiff also requests leave to amend her complaint to reflect that she has a cause of action under the Pregnancy Discrimination Act of 1978, or PDA.  Plaintiff avers that she mistakenly failed

---

[2] Plaintiff invoked the following state labor laws in her complaint: Puerto Rico Law No. 100 of June 30, 1959 ("Law 100"), P.R. Laws Ann. tit. 29, §§ 146 et seq.; Puerto Rico Law No. 80 of May 30, 1976 ("Law 80"), P.R. Laws Ann. tit. 29, §§ 185 et seq.; Puerto Rico Law No. 69 of July 6, 1985 ("Law 69"), P.R. Laws Ann. tit. 29, §§ 1321 et seq.; and Puerto Rico Law No. 3 of March 13, 1942("Law 3"), P.R. Laws Ann. tit. 29, § 467 et seq..  She also invoked an independent cause of action under Article II, sections 1, 8 and 16 of the Constitution of the Commonwealth of Puerto Rico, P.R. Const. art. II, §§ 1, 8 & 16, for violations to her dignity and privacy.

**Civil No. 09-2253 (GAG/MEL)**                    5

to include her PDA claim within the first cause of action listed in her complaint, titled "Title VII claim," stating instead that "Defendants violated the protections granted by 42 U.S.C. § 1983 . . ." (See Docket No. 1 at ¶¶ 5.1-5.5.)

The court notes that the Pregnancy Discrimination Act of 1978 did not create a separate cause of action for plaintiffs discriminated against for reason of their pregnancy. The PDA merely added pregnancy, childbirth, and related medical conditions as conditions constituting a protected class for purposes of sex discrimination under Title VII. See Gonzalez v. Biovail, 356 F. Supp. 2d 68, 78 (D.P.R. 2005) (citing Armstrong v. Flowers Hosp., Inc., 33 F.3d 1308, 1312 (11th Cir. 1994)). "Rather than introducing new substantive provisions protecting the rights of pregnant women, the PDA brought discrimination on the basis of pregnancy within the existing statutory framework prohibiting sex-based discrimination." Armstrong, 33 F.3d at 1312. Pregnancy discrimination claims are analyzed as sex discrimination suits under Title VII. Therefore, there is no need to amend the complaint to reflect a separate claim under the PDA.

As it would be futile to amend the complaint to include a cause of action under the PDA, Plaintiff's motion for leave to amend the complaint (Docket No. 32) is **DENIED**.

   ***B.    Co-defendants Tuxa and Perez's Motion to Dismiss (Docket No. 22)***

In their motion to dismiss, Tuxa and Perez argue that Plaintiff's Section 1983 and Article 1802 causes of action should be dismissed for failure to state a claim and timeliness, respectively. Given the court's disposition of Plaintiff's motion to voluntarily dismiss those claims (Docket No. 32), *supra*, it finds that the co-defendants' arguments as to these causes of action are moot.

   **1.    Individual Liability under Title VII and Law 80**

Co-defendants Fuxa and Perez also move to dismiss Plaintiff's Title VII and Law 80 claims against them, in their personal capacities, arguing that neither statute provides for individual liability. Indeed, the First Circuit has held that there is no individual employee liability under Title VII. See Fantini v. Salem State College, 557 F.3d 22, 31 (1st Cir. 2009). "Title VII addresses the conduct of employers only and does not impose liability on co-workers." Id. at 31 (quoting Powell v. Yellow Book U.S.A., Inc., 445 F. 3d 1074, 1079 (8th Cir. 2006)). The same conclusion has been drawn in

**Civil No. 09-2253 (GAG/MEL)**                6

this district regarding personal liability under Puerto Rico Law 80.  See Flamand v. American Intern. Group, Inc., 876 F.Supp. 356, 364 (D.P.R. 1994); Miro Martinez v. Blanco Velez Store, Inc., 393 F. Supp. 2d 108, 113 (D.P.R. 2005); Velez Nieves v. Microsoft Caribbean, Inc., 2006 WL 1805689, *7-8 (D.P.R. 2006).  This case law impedes Plaintiff from bringing suit against the defendants in their personal capacities, as agents or supervisors at FJ Construction, and restricts liability under Title VII and Law 80 to the employer, FJ Construction.

     Plaintiff does not contest this argument in her opposition.  Instead, she advances the theory that FJ Construction should not provide a liability shield for Fuxa and Perez because their misuse of the corporate form should compel the court to pierce the corporate veil and impose personal liability.  After examining Plaintiff's allegations opposite the applicable case law, the court concludes that the allegations are insufficient in this case for the court to pierce the corporate veil and hold either of the named co-defendants individually responsible for the company's liability under Title VII.

     The principle of limited liability in corporate law creates "a presumption that a corporate entity is separate from its stockholders, directors, officers, employees and/or any controlling entity." Garcia Colon v. Garcia Rinaldi, 2006 WL 3421862, *6 (D.P.R. 2006) (citing Fleming v. Toa Alta Development Corp., 96 P.R.R. 234, 96 D.P.R. 240, 243 (1968)); see also De Breceni v. Graf Bros. Leasing, Inc., 828 F.2d 877, 879 (1st Cir. 1987) (noting that "the principle of limited liability is a cornerstone of corporate law").  A party may, however, pierce the corporate veil of a corporation "by strong and robust evidence" under limited circumstances.  Garcia Colon, 2006 WL 3421862 at *6 (citing San Miguel Testil Corp. v. P.R. Drydock, 94 P.R.R. 403, 409, 94 D.P.R. 424 (1967)).  The First Circuit has identified a number of factors that must be assessed in considering whether there has been corporate misuse: (1) whether there has been inadequate capitalization in light of the purposes for which the corporation was organized; (2) extensive or pervasive control by the shareholder or shareholders; (3) intermingling of the corporation's properties or accounts with those of its owner; (4) a failure to observe corporate formalities and separateness; (5) siphoning of funds from the corporation; (6) an absence of corporate records; and (7) non-functioning officers or

**Civil No. 09-2253 (GAG/MEL)**          7

directors. Velasquez v. P.D.I. Enterprises, Inc., 141 F. Supp. 2d 189, 193 (D.P.R 1999) (citing Town of Brookline v. Gorsuch, 667 F.2d 215, 221 (1st Cir. 1981)).

The following are Plaintiff's only allegations in the complaint as to the corporate structures here at issue. FJ Construction was suffering financial difficulties and could not pay their suppliers due to debt owed to the company from a previous construction project. In order to remedy this situation, FJ Construction's Board of Directors decided to create and operate a sister company under the name of Escorial Development. Escorial Development took on all new projects that were previously planned to be performed by FJ Construction. Escorial Development operated from the same building as FJ Construction and both of their Boards of Directors were comprised of the same members, who occupied the same positions on each board. Finally, Escorial Development used the same personnel employed by FJ Construction to perform its duties and projects, without ever formally hiring them.

In her opposition to the defendants' motion to dismiss, Plaintiff argues that "there is such intermingling of both companies, their officials and their operations that, for all practical purposes, they are one and the same. By their own acts they have pierced their own corporate veils." (Docket No. 30, ¶ 10.) This court has held that "[a] plaintiff who asks a court to disregard independent corporate structures by piercing a subsidiary's 'corporate veil' faces a high burden of proof." Velasquez, 141 F. Supp. 2d at 193. As stated by the First Circuit,

> [c]orporations which simply try to limit their overall liability by establishing, or acquiring, separately incorporated subsidiaries do not thereby transgress legal or ethical norms. In our commercially sophisticated society, limited liability is often a paramount consideration in the decision to maintain corporate separateness, and properly so.

United Electrical Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1093 (1st Cir. 1992). A plaintiff may pierce the corporate veil of a corporation "by [presenting] strong and robust evidence showing the parent to have that degree of control over the subsidiary as to render the latter a mere shell for the former." Escude-Cruz v. Ortho Pharmaceutical Corp., 619 F.2d 902, 905 (1st Cir. 1980) (internal quotations omitted). "To determine whether separate corporations constitute a single employer, the First Circuit has applied the four factors set out in Radio & Television Broadcast

**Civil No. 09-2253 (GAG/MEL)**                    8

Union v. Broadcast Service of Mobile, Inc., 380 U.S. 255, 256 (1965) (per curiam): (1) interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership." Milan v. Centennial Communications Corp., 500 F. Supp. 2d 14, 27 (D.P.R. 2007) (citing Penntech Papers, Inc. v. N.L.R.B., 706 F.2d 18, 25 (1st Cir. 1983) (citing Soule Glass & Glazing Co. v. NLRB, 652 F.2d 1055, 1075 (1st Cir. 1981))).  No one of these factors is controlling, nor need all of them be present. Id.

Plaintiff's allegations could be sufficient to allow this court to conclude, at the motion to dimiss stage, that the operations of FJ Construction and Escorial Development were so interrelated "as to render the latter a mere shell for the former." Escude Cruz, 619 F.2 at 905.  Regardless, the court fails to see how this conclusion would render co-defendants Fuxa and Perez liable for either corporation's liability under Title VII.  If indeed Escorial Development is a mere shell corporation for FJ Construction, what would follow is that FJ Construction would be liable for Escorial Development's activities as "a single employer," Milan, 500 F. Supp. 2d at 27.  It does not follow that the *officials or shareholders* of either company would be rendered liable.  In order for the court to conclude, as Plaintiff requests, that the companies' officials or shareholders be held personally liable for the companies' acts, the allegations in the complaint would have to support a finding that the corporate veil should be lifted in terms of the shareholder-corporation relationship.

As this court has previously noted,  "a corporation is the alter ego or business conduit of its stockholders when there is such unity of interest and ownership that . . . the corporation actually is not a separate and independent entity."  Rivera v. Reed, 2010 WL 683406, *2 (D.P.R. 2010) (quoting D.A.C.O v. Alturas Fl. Dev. Corp., 132 D.P.R. 905, 1993 WL 840226 (1993)).  Although Plaintiff indicates in her opposition that "both defendant corporations are considered close corporations due to the minimal number of shareholders that possess the companies' shares," and that "said shareholders are also the company's main and only officials who were in charge of all the decision-making for both companies," (Docket No. 30, ¶9) no such allegations are contained in the complaint.  Notwithstanding, these allegations, if properly included in the complaint, would be factually insufficient to support the piercing of the corporate veil as to Fuxa and Perez in this case.

**Civil No. 09-2253 (GAG/MEL)**                    9

There is nothing illegal or unethical about operating as a close corporation, nor is it illegal or unethical for shareholders to also hold positions on a company's board of directors. "The principal reasons that justify the piercing of a corporate veil are that the corporation is being used to sanction fraud, provide injustice, evade obligations, defeat public policy, justify inequity, protect fraud or defend crime." Milan, 500 F. Supp. 2d at 26 (citing Garcia Colon, 2006 WL 3421862 at *6). Moreover, "the burden to pierce the corporate veil lies on the party seeking to pierce the veil," Id. (citing Diaz Aponte, 130 D.P.R. at 800)). The court finds that Plaintiff has not alleged any facts that would justify in law or in equity that FJ Construction's corporate veil be pierced so as to hold its shareholders or officials liable in the corporation's place.

As Plaintiff has not overcome the presumption of separateness, and as liability under Title VII and Law 80 is restricted to the employer, the court must **GRANT** the co-defendants' motion in this regard and **DISMISS** Plaintiff's Title VII and Law 80 claims against Fuxa and Perez in their personal capacities.

### 2.    Supplemental State Law Claims

The federal claims that remain against co-defendants FJ Construction and Escorial Development arise out of the same "nucleus of operative fact" as Plaintiff's state law causes of action against Fuxa and Perez. United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966); Rodriguez v. Doral Mortgage, 57 F.3d 1168, 1175 (1st Cir. 1995). Therefore, despite having dismissed Plaintiff's federal claims against Fuxa and Perez, the court shall retain jurisdiction of her state law claims against them. Defendants' motion to dismiss on this ground is **DENIED**.

### C.    Co-defendant FJ Construction's Motion to Dismiss (Docket No. 23)

In its motion to dismiss, FJ Construction argued for dismissal of Plaintiff's Section 1983 and Article 1802 causes of action for failure to state a claim and timeliness, respectively. Given the court's disposition of Plaintiff's motion to voluntarily dismiss those claims (Docket No. 32), it finds that the co-defendant's arguments as to these causes of action are moot. Therefore, FJ Construction's motion to dismiss (Docket No. 23) is **MOOT**.

### III.    Conclusion

For the reasons stated herein, the court **GRANTS in part and DENIES in part** Plaintiff's

**Civil No. 09-2253 (GAG/MEL)**               10

motion for voluntary dismissal and for leave to amend the complaint (Docket No. 32), **GRANTS** co-defendants Fuxa and Perez's motion to dismiss (Docket No. 22), and **FINDS AS MOOT** co-defendant FJ Construction's motion to dismiss (Docket No. 23).  Accordingly, Plaintiff's claims under Section 1983 and Article 1802 of the Puerto Rico Civil Code are hereby **DISMISSED** as to all defendants.  Plaintiff's cause of action under Title VII against co-defendants Fuxa and Perez is also **DISMISSED**.

Remaining before the court are Plaintiff's Title VII claims against FJ Construction and Escorial Development, as well as the remaining supplemental state law claims against all of the defendants, to wit: the Law 100, Law 80, Law 69 and Law 3 causes of action, as well as Plaintiff's independent cause of action under Article II, sections 1, 8 and 16 of the Constitution of the Commonwealth of Puerto Rico for violations to her dignity and privacy.

**SO ORDERED**

In San Juan, Puerto Rico this 18th day of May, 2010.

*S/Gustavo A. Gelpí*
GUSTAVO A. GELPÍ
United States District Judge