1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF PUERTO RICO

SHAKIRA NAVARRO-ROSARIO,

    Plaintiff,

      v.                                                    Civil No. 09-2253 (GAG)

FEDERICO J. FUXA-CATALAN, et al.,

    Defendants.

## OPINION AND ORDER

Plaintiff Shakira Navarro-Rosario ("Plaintiff") brought this action seeking redress for alleged discrimination on the basis of sex and pregnancy, pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 29 U.S.C. §§ 2000e *et seq.*, and the Pregnancy Discrimination Act of 1978 ("PDA"), 29 U.S.C. § 2000e-(k).  Plaintiff also invokes the supplemental jurisdiction of the court to adjudicate her claims under various Puerto Rico state laws.  Plaintiff filed this claim against her employer, FJ Construction Co., Inc. ("FJ"), and her employer's sister company, Escorial Development, Inc. ("Escorial"), as well as Federico Fuxa-Catalan ("Fuxa") and Gloria Perez ("Perez"), as the president and comptroller, respectively, of both companies.[1]  The court in a Memorandum Opinion and Order dated May 18th, 2010 (Docket No. 39) dismissed Plaintiff's Title VII and Law 80 claims against Fuxa and Perez in their personal capacities and retained jurisdiction of Plaintiff's state claims against them.[2]

---

[1] Also included in the complaint are defendant Fuxa's wife and conjugal partnership.  Javier Andreu, vice-president of both companies, was also brought in the complaint, but the claims against him were voluntarily dismissed.  (See Docket Nos. 18 & 19.)

[2] Remaining before the court are Plaintiff's Title VII claims against FJ and Escorial Development, as well as the remaining supplemental state law claims against all of the defendants, to wit: the Law 100, Law 80, Law 69 and Law 3 causes of action, as well as Plaintiff's independent

**Civil No. 09-2253 (GAG)**                     2

This matter is presently before the court on co-defendants' FJ and Escorial motion for summary judgment (Docket No. 85-2). Plaintiff timely opposed Defendant's motion for summary judgment (Docket No. 91). After reviewing the pleadings and pertinent law, the court **DENIES** Defendants' motion for summary judgment.

## I.       Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (citations omitted). The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. The nonmoving party must then "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and give that party the benefit of any and all reasonable inferences. Id. at 255. Summary judgment may be appropriate, however, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Municipality of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003))

## II.      Factual & Procedural Background

---

cause of action under Article II, sections 1, 8 and 16 of the Constitution of the Commonwealth of Puerto Rico for violations to her dignity and privacy. (See Docket No. 39.)

1  **Civil No. 09-2253 (GAG)**                              3

2          Plaintiff began working at FJ, a Puerto Rican construction company, in 2003. She first held

3  the position of warranty manager. She was appointed estimator of the Company in 2004, and as

4  purchasing manager in 2005. While working at FJ, Plaintiff had three (3) pregnancies and gave birth

5  to two (2) children. In December 2008, Plaintiff was terminated from her employment. She alleges

6  that the reason for termination was her third pregnancy. Defendants contend that Plaintiff  was

7  terminated as a result of the need to reduce its operational costs due to its financial difficulties.

8          In her deposition, Plaintiff testified that she was harassed and discriminated against during

9  her second and third pregnancies. According to Plaintiff, she was harassed and discriminated against

10  by her boss, Fuxa, when she informed him that she was pregnant with her second child, and he

11  allegedly responded: "¿no jodas?"[3]  (See Docket No. 100-2 at 58, l. 23-24.)  Plaintiff stated at her

12  deposition that this incident occurred in front of other employees and as a result, she felt humiliated

13  and embarrassed.  (See Docket No. 100-2 at 59, l. 20-24.)  Also during her second pregnancy,

14  Plaintiff felt harassed when Perez, treasurer and comptroller of the company, sent her various

15  consecutive e-mails questioning her work.  (See Docket No. 90-11 at 1-3; Docket No. 100-2 at 48,

16  l. 17-20; at 49, l. 4-12, 23-25 and at 50, l. 1-3.)  These e-mails were sent to her one day prior to the

17  receipt of her first job performance evaluation and she alleges that they had a negative effect on said

18  evaluation. The record shows that this was her first job evaluation and that Plaintiff was surprised

19  by the poor evaluation she received, because her employer had never written or verbally expressed

20  any kind of negative criticism regarding her work.  (See Docket No. 91-30 at 1-8, and Docket No.

21  100-2 at 64, l. 24-25 and at 65, l. 10-16.)

22          Fuxa's comment together with Perez' constant scrutiny of her work and the negative job

23  evaluation she received, made her fear that she would be terminated.  (See Docket No. 1 at ¶ 4.13.)

24  As a result, she went to the U.S. Department of Labor to receive an orientation as to her rights and

25  was informed that the only thing they could do at that point was to make sure that FJ maintained her

26  _____

27          [3] "¿No jodas?" in Puerto Rico translates to "you're shitting me?" (translation by certified

28  court interpreter Janis Palma).

1  **Civil No. 09-2253 (GAG)**                              4

2  employment during her pregnancy and maternity leave.  (<u>See</u> Docket No. 91-22 at ¶ 23.)

3        Defendants contest Plaintiff's allegations of pregnancy discrimination by stating in their

4  pleadings that when Plaintiff had complications during her second pregnancy, Fuxa tried to

5  accommodate her needs by offering her a part-time arrangement in which she would be compensated

6  with her full time salary.  The record shows that the part-time arrangement lasted one week.

7  According to Plaintiff, the arrangement did not last because Fuxa determined that Plaintiff could not

8  perform her duties adequately under this arrangement.  (<u>See</u> Docket No. 90 at ¶ 19.)  According to

9  defendants, the part-time arrangement did not materialize because of Plaintiff's doctor's orders.  (<u>See</u>

10 Docket No. 101 at ¶¶ 17, 18, 19.)  There were two additional part-time arrangements agreed upon

11 by Plaintiff and Defendants.  The final one being six hour day shifts with half hour lunch breaks.

12 Finally, Plaintiff was ordered bed rest because she was having complications with her pregnancy.

13 (<u>See</u> Docket No. 90 at ¶ 19.)

14       During Plaintiff's second maternity leave, Defendants renewed their medical insurance

15 contract and issued employees new insurance cards.  It is a contested fact whether or not Plaintiff

16 was timely informed that new cards had been issued, and whether or not she was informed that if

17 she sent a representative to pick up the cards he would need a written authorization from her.  (<u>See</u>

18 Docket No. 100-3 at ¶ 10.)  Plaintiff alleges that when her partner and father of her third child, went

19 to pick up the new insurance cards, an employee at FJ refused to give him the cards because he didn't

20 have Plaintiff's written authorization.  Even though Plaintiff pleaded over the phone with the FJ's

21 employee to give her partner the cards, he was told to come back the following week. Her children

22 were sick with bronchitis and asthma during the weekend and had to go to the emergency room and

23 since she didn't have insurance coverage she had to pay for the emergency room visit.  Plaintiff states

24 under oath that her second baby was not included in the new insurance contract.  (<u>See</u> Docket

25 No.91-22, at ¶¶ 41, 42, 43.)

26       During 2007, FJ suffered financial difficulties and could not pay its suppliers due to debt

27 owed to the company from a previous construction project.  As a result of FJ's critical financial

28

1   **Civil No. 09-2253 (GAG)**                          5

2   situation, MAPFRE, FJ's surety, did not issue FJ additional insurance bonds and recommended that

3   its board of directors form a new corporation.  Following MAPFRE's advice, Escorial was born and

4   began operations in 2007.  The same year, FJ and Escorial entered into a written service contract

5   (See Docket No. 100-4.)  Under the contract, Escorial paid FJ a monthly fee of thirteen thousand

6   dollars ($ 13,000.00) for the use of its facilities, equipment, and/or any other materials including

7   personnel.  The service contract authorized FJ employees to perform all sorts of tasks related to the

8   construction business. Defendants allege that Plaintiff was never employed by Escorial, that she was

9   never paid a salary by Escorial, nor did she ever apply for a job at Escorial.  Instead, she performed

10  tasks in accordance with the service contract entered into by both companies.[4]  (See Docket No.

11  100-2 at 28, l. 23-25; at 29 l. 1-3.)  Plaintiff counter alleges that she and other employees were never

12  informed of the existence of the above mentioned service contract.  Furthermore, it is Plaintiff's

13  contention that FJ employees were under the impression that they worked for Escorial as well as for

14  FJ.  In fact, Plaintiff declared at her deposition that seventy percent (70%) of the work she performed

15  as purchaser was for Escorial.  (See Docket No. 100-2 at 29 l. 4-22.)

16         In order to reduce operational costs, FJ had to make adjustments in the work shifts of all

17  company employees due to the lack of new construction projects.  As of October 2008, FJ's current

18  liabilities exceeded its current assets by $5,988,889 and its stockholders' deficiency amounted to

19  $1,362,999.00.  (See Docket No. 100-3 at 25.)

20         It is an uncontested fact that around September 2008, Plaintiff informed Defendants that she

21  was pregnant with her third child.  Plaintiff alleges that in response to the news of her third

22  pregnancy, Perez commented: "But again, Shakira?"  (See Docket No. 100-2 at 56, 2-3).  Three

23  months  later,  on  December  8,  2008,  FJ  laid-off  Plaintiff  as  well  as  two  other  non-pregnant

24

25

26         [4] Plaintiff testified at her deposition that during the years she worked for FJ, her salary was
    always paid by FJ.  (See Docket No. 100-2 at 26, 10-11.)  She also testified that at the end of each
27  fiscal year FJ provided her with a tax withholding stub for purposes of her tax returns that reflected
    compensation paid to her by FJ.  (See Docket No. 100-2 at 26, 17-19.)  In addition, FJ  paid the
28  premiums for her health insurance plan. (See Docket No. 100-2 at 28, 3-16.)

**Civil No. 09-2253 (GAG)**                6

employees, Liza Alvarado and Denise Collado, allegedly as a result of its financial difficulties.

Plaintiff contends that she was terminated as a result of her third pregnancy, because her employer

feared that she would suffer the same complications she went through during her second pregnancy,

which resulted in absences from the workplace.

On December 9, 2008, Plaintiff filed an administrative complaint with the Equal

Employment Opportunity Commission ("EEOC") and the Puerto Rico Antidiscrimination Unit

("ADU") and She also claimed unemployment benefits with the Puerto Rico Department of Labor.

On September 25, 2009, the EEOC issued the Notice of Right to Sue letter. Plaintiff filed the

complaint at bar within the 90 day period after the Notice of Right to Sue was issued. (See Docket

No. 1-2.)

    **III.**    **Discussion**

        **A.**    **PDA Claim**

Defendants allege that Plaintiff has failed to demonstrate sufficient evidence to create a

material issue of fact with regard to a number of elements of her claim under the PDA.

Under Title VII, it is unlawful for an employer to discharge or otherwise discriminate against

any individual on the basis of "race, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

The Pregnancy Discrimination Act of 1978 added pregnancy, childbirth, and related medical

conditions as conditions constituting a protected class for purposes of sex discrimination under Title

VII. See Gonzalez v. Biovail, 356 F. Supp. 2d 68, 78 (D.P.R. 2005). Title VII claims, in which a

plaintiff is unable to demonstrate direct evidence of discrimination, follow the McDonnell Douglas

burden shifting analysis. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993);

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). To establish a pregnancy discrimination

claim under Title VII, a plaintiff must demonstrate: 1) that she is a member of a protected class; 2)

that she was qualified for the position and performed her job satisfactorily; 3) that her employer took

an adverse employment action against her; and 4) that the employer had a continuing need for the

services that plaintiff had been rendering. See Hernández-Mejías v. General Elec., 428 F. Supp. 2d

4 (D.P.R. 2005); Gorski v. New Hampshire Dept. Of Corrections, 290 F.3d 466, 474-75 (1st Cir..,

**Civil No. 09-2253 (GAG)**                7

2002).  After establishing the *prima facie* case, the burden of production shifts to the employer to

provide a legitimate nondiscriminatory reason for the adverse employment decision.  See Hicks, 509

U.S. at 506-07.  If the employer does so, the burden of production then returns to the plaintiff, who

must make a showing that the defendant's explanation was merely pretext and that the real reason

for the adverse action was discrimination based on her pregnancy.  See Thomas v. Eastman Kodak

Co., 183 F.3d 38, 56 (1st Cir.1999).

In their motion for summary judgment, Defendants aver that Plaintiff has failed to establish

a *prima facie* case of pregnancy discrimination.  Furthermore, Defendants allege that FJ had

legitimate nondiscriminatory reasons for terminating the Plaintiff and that there is no evidence that

other similarly situated employees outside of her protected class were treated more favorably.

### 1.    Prima Facie Case

#### a.    Membership in a Protected Class

Plaintiff clearly demonstrates that she was part of a protected class.  In their statement of

uncontested material facts Defendants state that Plaintiff notified them that she was pregnant with

her third child around September 2008.  (See Docket No. 101 at ¶ 46.)  Plaintiff demonstrates the

first prong of a *prima facie* case of sex discrimination.

#### b.    Qualified for the Position and Performed Her Job Satisfactorily

Plaintiff demonstrates that she was qualified for the positions of warranty manager, estimator

and purchasing manager of the Company.  In their statement of uncontested material facts

Defendants state that Plaintiff held the above mentioned positions. (See Docket No. 101 at 6, 8, 15.)

The following are uncontested facts: In November 2003, Plaintiff was hired as a supervisor of the

Warranties Department. (See Docket No. 90-7 at 23.)  In this position she had several employees

under her supervision.  In May 2004,  during her first pregnancy, Plaintiff was appointed estimator

by Defendants.  In order for her to perform the newly assigned duties related to price quotes for new

construction projects, Fuxa had Plaintiff take three courses related to the examination and

understanding of blueprints. To attend one of these courses Plaintiff had to fly to the state of Florida

**Civil No. 09-2253 (GAG)**                                    8

accompanied by Fuxa.  At this point she was 6 months pregnant with her first child.  In January,

2005 Plaintiff was appointed as purchase manager of FJ.  In this position she was in charge of calling

FJ's suppliers to inquire about the prices of equipment and construction materials.  In the different

positions that she held, Plaintiff consistently received salary raises, as did other employees.  (See

Docket No. 91-1 at 46, 47, 48, 51, 52.)

There is no issue of fact regarding Plaintiff's qualification for the job or her performance.

Plaintiff demonstrates the second prong of a *prima facie* case of sex discrimination.

### c.    Adverse Employment Action

It is an uncontested fact that Plaintiff was terminated from her employment on December 8,

2008, while she was pregnant with her third child.  Plaintiff demonstrates the third prong of a *prima*

*facie* case of sex discrimination.

### d.    Inference of Unlawful Discrimination

Defendants aver that Plaintiff has failed to present direct evidence demonstrating the last

prong of a *prima facie* case of pregnancy discrimination; an inference of unlawful discrimination.

According to First Circuit case law, a complainant may satisfy this fourth prong by showing "that

the employer had a continued need for 'someone to perform the same work after [the complainant]

left.'"  Alvarez Cabrera v. Trataros Const. Inc., 184 F. Supp. 2d 149, 152 (D.P.R. 2002) (quoting

Cumpiano v. Banco Santander Puerto Rico, 902 F.2d 148, 155 (1st Cir. 1990)).

Plaintiff alleges that she acted as purchase manager for both FJ and Escorial.  Specifically,

she alleges that between 2007 and 2008, 70% of the work she performed was for Escorial.  (See

Docket No. 100-2 at 29, l. 4-22 and at 94 l. 4-6.)  Plaintiff claims that when she was terminated from

her job, employee Liza Meléndez, who was not pregnant, continued performing her duties as

purchase manager for Escorial.  (See Docket No. 100-2 at 94 l. 12-19 and at 95 l. 14-15.)  Plaintiff

argues that FJ and Escorial acted as the same company, they acted as a single employer; therefore,

the fact that Liza Meléndez was performing as purchase manager for Escorial proves that defendants

had a continuing need for the duties Plaintiff performed.

Defendants counter-allege that FJ and Escorial are separate entities that have separate

**Civil No. 09-2253 (GAG)**                                    9

accounting departments, separate corporate structures and file their corporate documents

individually.  (See Docket No. 101 at 75.)  They argue that the work that plaintiff performed for

Escorial was as a result of the existing service contract between FJ and Escorial.  Defendants allege

that after Plaintiff was dismissed they terminated the position of purchase manager at FJ.  They

contend that FJ did not have any new projects and was performing warranty work for completed

projects. Therefore, the minimal purchases required were handled by the corporation's shareholders.

(See Docket No. 101 at ¶¶63, 64.)

     Plaintiff argues that purchases for Escorial and FJ were not handled by its shareholders, but

instead they were handled by Plaintiff, and by Liza Mélendez after Plaintiff was terminated.

Furthermore, Plaintiff alleges that Fuxa, acknowledged in his deposition that Liza Meléndez acted

as purchaser for Escorial.  (See Docket No. 90-26 at 41, l. 14-17.)  Plaintiff provides two sworn

statements, one from an FJ supplier and one from an FJ and Escorial chauffer, that was under

Plaintiff's supervision.  They both declare that Liza Meléndez continued to perform Plaintiff's duties

as purchase manager once she was laid off.  (See Docket No. 91-48 at ¶¶ l-2.)

     With respect to the fourth prong of the *prima facie* case of sex discrimination, Plaintiff raises

an issue of material fact.  Therefore, the court must submit to the jury the question of whether or not

FJ and Escorial continued to employ someone in Plaintiff's position following her termination.

     As there is a contested issue of fact with regards to this fourth and final element, the court

**DENIES** summary judgment at this stage.

             **2.**        **Legitimate Non-Discriminatory Reason for Termination**

     Defendants contend that even if Plaintiff has sufficiently pled a *prima facie* case of

pregnancy discrimination, her claim still fails under the second step of the McDonnell Douglas

burden shifting analysis.  Once a plaintiff has established their *prima facie* case, the burden of

production shifts to the employer to proffer a legitimate non-discriminatory reason for the

employee's discharge.  See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993).  In meeting this

burden, Defendants have proffered, as the reason for Plaintiff's discharge, that she was terminated

together with two other non-pregnant employees as a result of FJ's financial difficulties. Defendants

**Civil No. 09-2253 (GAG)** 10

contend that Plaintiff's termination was a business decision and was not based on her pregnancy. (See Docket No. 101 at 53, 56, 57.)

Plaintiff does not contest that FJ was struggling financially. Instead, she alleges that Escorial was created as an alter ego of FJ so it could continue bidding on new projects and participating in new developments because FJ was unable to acquire new projects or obtain financial credit as a result of its dire financial situation. (See Docket No. 91 at 20.) Plaintiff further contends that Escorial was created as a result of FJ's inability to pay its suppliers, obtain credit, or cover its costs. As an alter ego of FJ, Escorial employed all of FJ's employees with the exception of the Plaintiff, and two other non-pregnant employees.

The jury will ultimately decide whether Escorial was created as an alter ego of FJ and whether both corporations acted as a single employer for purposes of Title VII liability. However, for purposes of this motion, the court will assume that Defendants have met their burden of production and will therefore move onto the final step of the McDonnell Douglas analysis: whether Plaintiff has provided evidence that would allow the jury to infer that Defendants' proffered reason for the discharge was pretextual. See Thomas v. Eastman Kodak Co., 183 F.3d 38, 56 (1st Cir. 1999).

### 3. Pretext

The First Circuit has warned that where a plaintiff in a discrimination case makes out a *prima facie* case and the issue becomes whether the employer's stated nondiscriminatory reason is a pretext for discrimination, courts must be "particularly cautious" about granting the employer's motion for summary judgment. See Hodgens v. General Dynamics Corp., 144 F.3d 151, 167 (1st Cir. 1998) (quoting Stepanischen v. Merchants Despatch Transp. Corp., 722 F.2d 922, 928 (1st Cir. 1983)). However, this caution does not preclude the court from granting summary judgment on the issue of intent. See id. "'If the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation,' summary judgment may be appropriate even where intent is an issue." Id. (quoting Smith v. Stratus Computer, Inc., 40 F.3d 11, 12 (1st Cir. 1994)). Where, however, the nonmoving party has produced more than that, trial courts "should 'use restraint in

**Civil No. 09-2253 (GAG)**                11

granting summary judgment' where discriminatory animus is in issue." <u>DeNovellis v. Shalala</u>, 124

F.3d 298, 306 (1st Cir. 1997) (quoting <u>Velazquez v. Chardón</u>, 736 F.2d 831, 833, (1st Cir. 1984));

<u>see Stepanischen</u>, 722 F.2d at 928.  The role of the trial judge at the summary judgment stage is not

to weigh the evidence and determine the truth of the matter, but to determine whether there is a

genuine issue for trial." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986); <u>see</u> <u>Hodgens</u>

<u>v. General Dynamics Corp.</u>, 144 F.3d 151, 167 (1st Cir. 1998).  Conclusory statements must be

supported by factual allegations in order for the court to find that a genuine issue of material fact

exists.  <u>See</u> <u>Velazquez</u>, 736 F.2d 834.

In the case at bar, Plaintiff bears the ultimate burden of establishing that her employer's stated

reason for her dismissal was a pretext for discriminatory animus.  "An employee can establish

pretext 'by showing weaknesses, implausibilities, inconsistencies, incoherences, or contradictions

in the employer's proffered legitimate reasons such that a factfinder could infer that the employer

did not act for the asserted non-discriminatory reasons.'" <u>Carreras v. Sajo, Garcia & Partners</u>, 596

F.3d 25, 37 (1st Cir. 2010) (quoting <u>Santiago-Ramos v. Centennial P.R. Wireless Corp.</u>, 217 F.3d

46, 56 (1st Cir. 2000).  "Evidence that the employer's stated reasons are pretextual can be sufficient

for a jury to infer discriminatory animus." <u>Che v. Massachusetts Bay Transp. Authority</u>, 342 F.3d

31, 39 (1st Cir. 2003).  A plaintiff can also demonstrate pretext by showing that decisionmakers, or

those in a position to influence decision makers, made discriminatory comments.    <u>See</u>

<u>Santiago-Ramos</u>, 217 F.3d at 56.

Plaintiff attempts to demonstrate pretext by providing evidence that Fuxa, her boss and

supervisor, and Perez, treasurer and comptroller, made discriminatory comments during her second

and third pregnancies.  For example, when she informed Fuxa that she was pregnant with her second

child, he allegedly responded: "¿no jodas?" ("you're shitting me?")  (<u>See</u> Docket No. 100-2 at 58,

23-24.) Another instance in which Plaintiff alleged she felt discriminated against was when Plaintiff

informed Perez of her third pregnancy, and she allegedly commented: "But again, Shakira?" (<u>See</u>

Docket No. 100-2 at 56, 2-3.)  Plaintiff also alleges that during her second pregnancy she was

harshly scrutinized by Perez. As an example of this scrutiny, she proffers that she was forced to call

**Civil No. 09-2253 (GAG)**                          12

Perez every day at six thirty in the morning when she arrived at work.  Also during her second

pregnancy, Plaintiff felt harassed when Perez, sent her various consecutive e-mails.  Specifically,

the messages dealt with the subject of the trucks under her supervision being left on, while the

drivers dispatched construction materials, and the tracking of the truck drivers' location.  (See

Docket No. 100-2 at 49, l. 4-7.)  These e-mails were sent to her one day prior to the receipt of her

first job performance evaluation and she alleges that they had a negative effect on said evaluation.

The record shows that this was her first job evaluation and that Plaintiff was surprised by the poor

evaluation she received, because her employer had never written or verbally expressed any kind of

negative criticism regarding her work.  (See Docket No. 100-2 at 64 l. 24-25 and l. 10-16.)  See

*supra* section II at 4 l. 13-24.

Furthermore, in asserting that Defendants' stated reason for discharge was merely a pretext

for discriminatory intent Plaintiff alleges that Escorial was created as an alter-ego of FJ to continue

with FJ's business, since FJ did not have credit to buy supplies and could not get new projects.  (See

Docket No. 91 at 22.)  Plaintiff alleges that after she was terminated from FJ, together with Liza

Alvarado and Denisse Collado, the remaining employees at FJ were absorbed by Escorial.  In order

to prove this assertion, Plaintiff submits as evidence Escorial's and FJ's employees list.  (See Docket

No. 90-4 and 90-21)  These lists evince that between the years 2007 and 2009 FJ's remaining

employees were transferred to Escorial. Plaintiff claims that even though she was qualified for the

job, was the employee with the most years of experience, and there was a need for the position of

purchaser,  she was not hired by Escorial; because she was pregnant.

In addition, Plaintiff contends that Liza Alvarado and Denisse Collado, both non-pregnant

employees who were terminated together with Plaintiff, cannot be situated in the same situation as

her. On the one hand, she argues that Alvarado did not possess Plaintiff's qualifications and she had

only worked for a little over a year at FJ; therefore she admits that her dismissal was appropriate

considering FJ's critical financial situation.  On the other hand, Plaintiff argues that the fact that

Defendants state that Denisse Collado was laid off from FJ, instead of from Escorial, is an

inconsistency that proves the intermingling and interrelation between both corporations.  Plaintiff

**Civil No. 09-2253 (GAG)**                                    13

alleges that Defendants stated that when Escorial began operations they initially hired two

employees, Collado and Liza Meléndez, but they declare that Collado was laid off together with

Plaintiff and Alvarado, from FJ.  (See Docket Nos. 91 at 13 and 85-2 at 5.)  Plaintiff argues that

Defendants asserted reason for her termination was pretextual since the real reason for her

termination was "an act of discrimination because of her various pregnancies." (See Docket No. 91

at 13.)

       In considering all the evidence presented by Plaintiff, the court finds that a reasonable jury

could infer that FJ acted with discriminatory intent when discharging Plaintiff from her position as

purchase manager.  Because a reasonable jury could credit the testimony of Plaintiff over that of her

employer, they could also infer that Defendants' stated reason for her discharge  was pretextual and

used to obscure underlying discriminatory intent.  While such a finding is not necessarily imputed

by the evidence, it is not unreasonable to think that such a conclusion could be reached when

considering the evidence presented by both parties.  As previously stated, this task is prescribed to

the jury and not the judge.  Therefore, the court **DENIES** Defendants' motion for summary judgment

as to Plaintiff's claim of pregnancy discrimination under Title VII.

### B.    Plaintiff's Claims against Escorial

       Plaintiff claims that Escorial should be held jointly liable with FJ as an alter-ego of FJ.

Plaintiff alleges FJ used Escorial as an alter-ego to "carry on its business because the financial

situation they were in, would not let them acquire new projects or financial credit." (See Docket No.

91 at 20.)  Plaintiff claims that the corporate veil between the corporations should be pierced and

as a result both companies should be treated as a single employer.[5]

       This court has held that "[a] plaintiff who asks a court to disregard independent corporate

structures by piercing a subsidiary's 'corporate veil' faces a high burden of proof."  Velazquez v.

---

[5] Plaintiff establishes that in his deposition, Fuxa admitted that Escorial was created to continue with FJ's business.  (See Docket no. 90-18 at 37, l.13-18.)  Allegedly, his declaration si another admission of the inter-mingling and operational connection between FJ and Escorial.

**Civil No. 09-2253 (GAG)**                    14

P.D.I. Enterprises, Inc., 141 F. Supp. 2d 189 at 193 (D.P.R. 1999).  As stated by the First Circuit, "[c]orporations which simply try to limit their overall liability by establishing, or acquiring, separately incorporated subsidiaries do not thereby transgress legal or ethical norms.  In our commercially sophisticated society, limited liability is often a paramount consideration in the decision to maintain corporate separateness, and properly so."  United Elec., Radio and Mach. Workers of America v. 163 Pleasant St. Corp., 960 F.2d 1080, 1093 (1st Cir. 1992).

A plaintiff may pierce the corporate veil of a corporation "by [presenting] strong and robust evidence showing the parent to have that degree of control over the subsidiary as to render the latter a mere shell for the former."  See Escude-Cruz v. Ortho Pharmaceutical Corp., 619 F.2d 902, 905 (1st Cir. 1980) (internal quotations omitted).  "To determine whether separate corporations constitute a single employer, the First Circuit has applied the four factors set out in Radio & Television Broadcast Union v. Broadcast Service of Mobile, Inc., 380 U.S. 255, 256 (1965) (per curiam): (1) interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership."  Milan v. Centennial Communications Corp., 500 F. Supp. 2d 14, 27 (D.P.R. 2007) (citing Penntech Papers, Inc. v. N.L.R.B., 706 F.2d 18, 25 (1st Cir. 1983).  No one of these factors is controlling, nor do they all need to be present.  Id.

This court has recognized that as this determination requires an extremely fact-sensitive analysis, it is a question best suited for a jury.  See Crane v. Green & Freedman Baking Co., Inc.,134 F.3d 17, 22 (1st Cir. 1998); Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc., 933 F.2d 131, 137 (2d Cir. 1991); see also FMC Finance Corp. v. Murphree, 632 F.2d 413, 421 n.5 (5th Cir. 1980) (holding that, as a matter of federal procedure in diversity cases, the issue of corporate entity disregard is one for the jury).

Plaintiff alleges that FJ was suffering financial difficulties and could not pay their suppliers due to debt owed to the company from a previous construction project.  In order to remedy this situation, FJ's Board of Directors decided to create and operate a sister company under the name of Escorial.  Escorial took on all new projects that were previously planned to be performed by FJ.  Escorial operated from the same building as FJ and both of their Boards of Directors were comprised

**Civil No. 09-2253 (GAG)**                              15

of the same members, who occupied the same positions on each board.  Fuxa as president, Andreu

as vice president and Perez as treasurer, comptroller and secretary.  Both companies share phone

numbers, office equipment and supplies.  Finally, Escorial used the same personnel employed by FJ

to perform its duties and projects, without ever formally hiring them.  (See Docket No. 91 at 19-20.)

Plaintiff has created a material issue of fact with regard to the issue of Escorial's liability as

an alter ego.  The court **DENIES** defendant FJ's motion for summary judgment as to this issue.

### C.       Claims Arising Under Puerto Rico Laws

Defendants also seek summary judgment as to Plaintiff's supplemental claims pursuant to

Puerto Rico Law 100, Law 80, Law 69 and Law 3.  Plaintiff's local claims arise out of the same

nucleus of facts that give rise to her federal claims.  Plaintiff claims a violation of the Maternity

Leave Act ("Law 3"), P.R. Laws Ann. tit. 29, §469; Puerto Rico's Wrongful Dismissal Act ("Law

80"), P.R. Laws Ann. tit. 29, §185; Puerto Rico Employment Discrimination Law ("Law 100"), P.R.

Laws Ann. tit. 29, §146; and Puerto Rico's Sex Discrimination Statute ("Law 69"), P.R. Laws Ann.

tit. 29 §§1321 *et seq*.  These local statutes prohibit discrimination, among other factors, on the basis

of  sex  and  also  require  that  an  employer  show  that  termination  was  based  on  a  valid

nondiscriminatory reason. "Law 100 does not provide a definition of "just cause" therefore Puerto

Rico  Courts  have  adopted  the  guidelines  for  justifiable  dismissals  found  in  Law  80."  (Mejías

Miranda v. BBII Acquisition Corp., 120 F. Supp. 2d 157, 174 n.14 (D.P.R 2000).

Courts have recognized that Title VII sex discrimination claims and claims under the PDA

brought under Puerto Rico Law 100, Law 69 and Law 3 are analyzed analogously.  See Godoy v.

Maplehurst Bakeries, Inc., 747 F. Supp. 2d 298, 317 (D.P.R. 2010).  The court has held above that

a genuine issue of fact exists as to Plaintiff's claim for pregnancy discrimination. Therefore, the court

holds likewise, summary judgment is inappropriate as to the alleged violations of Puerto Rico Law

Nos. 100, 3, 69 and 80.  Defendants' motion for summary judgment as to these issues is hereby

**DENIED.**

### 1.       Statute of Limitations Under Law 100

Defendants allege that Plaintiff's Law 100 claim is time barred.  They claim that since

**Civil No. 09-2253 (GAG)**                    16

Plaintiff's EEOC charge did not contain any allegations under Law 100, it did not interrupt Law 100's statute of limitations.  This allegation is without merit.

The Supreme Court of Puerto Rico has consistently "held that the filing of an administrative complaint before the Equal Employment Opportunity Commission alleging sex discrimination in violation of Title VII toll[s] the statute of limitations for an equivalent cause of action under Puerto Rico law." Rodriguez-Garcia v. Municipality of Caguas, 354 F.3d 91 at 99 (1st Cir. 2004) (citing Matos Molero v. Roche Products, Inc., 132 D.P.R. 470 (1993)); See Leon-Nogueras v. Univ. of P.R., 964 F. Supp. 585, 589 (D.P.R. 1997) ("[The] filing of a Title VII claim with the EEOC not only tolls but suspends the running of the statute of limitations for claims under Law 100 arising out of the same incidents."  Consequently, this court held that "by filing an administrative complaint either with the EEOC or with the Anti-Discrimination Unit of the Department of Labor, and notifying such charge to the defendants, a plaintiff can toll the running of the statute of limitations for any claims under Title VII and Law 100." Leon-Nogueras 964 F.Supp. at 588.

With regards to the specificity of the administrative complaint, the First Circuit has clearly established that "[a]n administrative charge is not a blueprint for the litigation to follow." Powers v. Grinnell Corp., 915 F.2d 34, 37 (1st Cir. 1990) (citations omitted).  "The charge is not to be treated as a common-law pleading that strictly cabins the investigation that results therefrom, or the reasonable cause determination that may be rested on that investigation." Id. (citations omitted) (internal quotations marks omitted).  "The charge merely provides the EEOC with a jurisdictional springboard to investigate whether the employer is engaged in any discriminatory practices." Id. (citations omitted) (internal quotations marks omitted).  The purpose of the charge is to initiate an EEOC investigation, not to state sufficient facts to make out a *prima facie* case. Id. (quoting Sanchez v. Standard Brands, Inc., 431 F.2d 455, 465 (5th Cir. 1970)).  Therefore, "the exact wording of the charge of discrimination need not presage with literary exactitude the judicial pleadings which may follow." Powers, 915 F.2d at 39 (internal quotation marks omitted) (citations omitted).  "Rather, the critical question is whether the claims set forth in the civil complaint come within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of

**Civil No. 09-2253 (GAG)** 17

discrimination." Id. (citations omitted) (internal quotation marks omitted).

The record shows that Plaintiff filed an administrative complaint with the EEOC alleging sex discrimination due to pregnancy by employers FJ and Escorial on December 9, 2008, the day after she was terminated. (See Docket No. 90-15.) Law 100 is the local statute that protects employees from different types of employment discrimination, including sexual discrimination. Therefore, Law 100 clearly falls under the scope of Plaintiff's EEOC complaint. According to local and federal case law, the filing of the charge of discrimination with the EEOC interrupts the one year limitations period for Law 100. Therefore, the claim under Law 100 is not time-barred. Accordingly, the court **DENIES** Defendants' motion for summary judgment on Plaintiff's Law 100 claim under Puerto Rico law.

### D. Claims Under the Commonwealth's Constitution

In the complaint, Plaintiff also alleges a violation of her constitutional right to privacy, dignity, and a workplace free of risk and harm to one's personal integrity, pursuant to the Constitution of the Commonwealth of Puerto Rico, Article II, §§ 1, 8, and 16. In their motion for summary judgment, Defendants contend that the complaint was the first notice they received regarding Plaintiff's constitutional claims and therefore, the discrimination charge filed by Plaintiff with the EEOC does not toll the one year statute of limitations regarding such claims. As a result, Defendants aver that Plaintiff's constitutional claims are time-barred and must be dismissed.

Following the analysis set forth in Section C, 1. of this opinion, since Article II of the Constitution prohibits sexual discrimination, it falls within the scope of the administrative complaint filed by Plaintiff with the EEOC.[6] Therefore, the one year statute of limitations was interrupted with

---

[6] Article II § 1 of the Constitution of the Commonwealth of Puerto Rico reads as follows:

The dignity of the human being is inviolable. All men are equal before the law. No discrimination shall be made on account of race, color, sex, birth, social origin or condition, or political or religious ideas. Both the laws and the system of public education shall embody these principles of essential human equality.

**Civil No. 09-2253 (GAG)**                          18

the filing of the administrative complaint. As a result, Plaintiff's claims under Article II §§ 1, 8, and

16 of the Constitution of the Commonwealth of Puerto Rico are not time-barred. Accordingly, the

court **DENIES** Defendants' motion for summary judgment on Plaintiff's constitutional claims.

### IV.    CONCLUSION

Defendants motion for summary judgment is hereby **DENIED**. The causes of action brought

by Plaintiff for discrimination on the basis of sex and pregnancy pursuant to Title VII and the PDA,

remain before the court to be adjudicated by a jury. Defendants' request to dismiss the local claims

under Law 100, Law 3, Law 69, Law 80 and Article II, sections 1, 8 and 16 of the Constitution of

the Commonwealth of Puerto Rico are hereby **DENIED**.


**SO ORDERED**

In San Juan, Puerto Rico this 11th day of July, 2011.


*S/Gustavo A. Gelpí*

GUSTAVO A. GELPÍ

United States District Judge